**RECEIVED**

DEC - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

November 26, 2007

Civil Action No. 07-1363/JDB

Judge John D. Bates

Dear Clerk of the District Court,

The following information is an extension to the Petitioner's (Ernest Colts) response to the Parole Commission's Opposition to the Petitioner's Petition for a Writ of Habeas Corpus.

Argument

Revocation of parole is not, as the Parole Commission would have it, part of a criminal prosecution but is an administrative procedure that may result in depriving a parolee of his conditional liberty for failure to observe special parole conditions. In this chapter, the argument is in the question that attacks the procedures used by the Parole Commission in making their initial Probable Cause finding for revocation review and the procedures they used in determining "New Criminal Conduct" at the revocation hearing.

# Statement of Facts

The Parole Commission (the Commission) claims in their report that they had a "sufficient basis" to revoke this petitioner's supervised release. I disagree. Starting with the Probable Cause Hearing. Underneath each charge violation on the Warrant Application it specifically states that the charges are based on information contained in a police report dated 10-12-06. (see warrant application) To the contrary the Executive Reviewer of the Revocation hearing conducted his own investigation of the file and found that no police report existed in the Commission's files or in the courts records relating to the information on the Warrant Application. (see executive review cont) Moreover in the "status of custody/criminal proceedings" on the Warrant Application it states that there was no available information regarding the charge in P.R.I.S.M. (see warrant application) Futhermore the fact that a police report does not exist in this case substantiates that the information on the Warrant Application is false and not in any way related to Petitioner's arrest. Based on the previously stated facts in this section, the question is raised as to what procedures were used by the

Commission that abled them to obtain a violators warrant using unsubstantiated information and the procedures they used in making a probable cause finding for revocation review holding that the preponderance of the evidence standard would not have been effective in supporting that issue.

("Preponderance of the evidence means Proof by Information that, compared with information opposing it, leads to the conclusion that the fact at issue is more probably true than not".)

## Revocation Hearing

At the revocation hearing the Examiner (Dr. Price) documented the alleged victim's (Ms. Brown) admittance to making up stories. (see probable cause digest) That along with her inconsistent testimony raises suspicion as to the procedures used by the Commission in determining her level of credibility. Especially since there was no evidence to assert that any of the information documented was related to the November 1st arrest.

Let the record reflect that "a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence." (see pg. (12) first paragraph of Commission's Opposition)

Pg. (3) of 18

( The Commission is not bound by
the dismissal of a Criminal Case )

In support of this chapter in the Commission's report, I took the liberty of presenting the Courts with copies of three case laws referred to by the Commission in that section. (Barnes, Mullen, and Maddox v. U.S Comm.) In summary of those three cases, the Commission was able to violate the petitioner based on evidence of uncharged offences because they were able to make an independent finding substantiating that the petitioners were in violation of their release conditions. (28 C.F.R. section 2.21 states that "New criminal conduct may be determined either by new federal, state, or local convictions or by an Independent Finding by the U.S.P.C. at a revocation hearing. (see Mullen v. Comm.)

for example, in (Barnes v. Comm.), the Commission found by a preponderance of the evidence that Barnes had violated parole by possessing an illegal weapon eventhough the murder charge against him was droped. In (Mullen v. Comm.) the same finding was made by the preponderance of the evidence that Mullen had engaged in new criminal conduct by possessing a firearm which violates his release conditions. Finally in (Maddox v. Comm.) the Commission made a finding that Maddox had violated his release conditions

Pg. (4) of 18

by possessing a controlled substance. (see Maddox v. Comm.)

The Parole Commission states in their argument that "they are not bound by the dismissal of a criminal case".

I dissagree. The three previously stated case laws provide that the Commission was within their guidelines to revocate the named petitioner's release because they had violated one or more of their "conditions of release".

To the contrary, the petitioner in this case has not been convicted of a new offence, does not have technical violations and did not violate in any way his Conditions of Release. (see General Cond. form)

28 C.F.R. section 2.21 provides that "New criminal conduct may be determined either by a New Federal, state, or local conviction or by an Independent finding by the U.S.P.C at a revocation hearing".

The essential purpose of a revocation hearing is to determine by a preponderance of the evidence whether the parolee violated those conditions of release. (see warrant application) (see General Conditions)

If the petitioner has not been convicted of a New criminal offence and has not violated his release conditions, on what basis in regards to "New criminal conduct did the petitioner violate his parole?

Based on the previously stated facts and information presented in this case, I argue that the Commission had no factual basis to make a revocation decision in determining "New Criminal Conduct". Keeping in mind there was (no police report) for the Commission to refer to, what (28. C.F.R.) provides, the (case references) and the purpose of a Revocation Hearing.

## Final Argument

The Parole Commission violated this Petitioner's supervised release based on Ms. Brown's testimony, (alleged victim) The same Ms. Brown whom couldn't produce a police report, the same Ms. Brown whom is documented in the Parole Commission's transcripts admitting that "she makes up stories."
The fact to the matter is that Ms. Brown's testimony as well as the Commission's decision were both legally deficient in supporting a revocation decision with regards to "New Criminal Conduct." The fact that the Commission used false information as a basis for probable cause and revocation review then relying on Ms. Brown's testimony is an abuse of discretion and a violation of due process and the Constitutional

Law that "prohibits those whom bear False witness."

Futhermore. the Parole Commission's guidelines permit them to review evidence of uncharged offenses that a parolee has been arrested for. not unsubstantiated allegations for which they havent. The Parole Comm. unlawfully extracted information from a Civil Protection Order (C.P.O.) to pose as information regarding an arrest that they weren't able to obtain information on.

This truth can be substantiated by the non existing police report that none of the charge violations are supported by,, the Warrant Application that specifically states there was no information regarding the charge, and the C.P.O. which the information on the Warrant Application was extracted from.

For the foregoing reasons this Petitioner Petition for a Writ of Habeas Corpus relief should be granted, and based on the unconstitutional behavior of the Parole Commission this Petitioner's supervised release should be extinguished.

## "Conclusion"

The prejudice that this petitioner hopes to have shown in this chapter is that the Parole Commission unlawfully deprived him of his conditional liberty by intentionally using false information to obtain a violators warrant for his arrest, and as a basis to support a revocation decision knowing that the information wasn't supported by a criminal report (Police report).

The standard is that "a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence".

Respectfully Submitted,

Ernest (Coates) Colts

32042-007



**U.S. DEPARTMENT OF JUSTICE**
**UNITED STATES PAROLE COMMISSION**

**WARRANT APPLICATION**
**D.C. Code Offender**

Name.............................. Colts, Ernest

| | |
|---|---|
| Reg. No........................... **32042-007** | Date.......................................... **February 22, 2007** |
| DCDC No. ..................... **286-878** | Termination of Supervision ..... **December 15, 2009** |
| FBI No ........................... **707022DB0** | Violation Date .......................... **August 27, 2006** |
| Birth Date ...................... | Released ................................. **December 16, 2004** |
| Race .............................. **Black** | |

Sentence Length............ **3 years; 5 years supervised release**
Original Offense............ **Armed Robbery; Assault with Intent to Rob**

If you have been arrested on a violator warrant in the District of Columbia and you have not been convicted of a new offense, you shall be given a probable cause hearing within five days of your arrest and violator warrant. Probable cause hearings are normally scheduled on Tuesdays and Fridays at the Central Detention Facility. The purpose of the probable cause hearing is to determine if there is probable cause to believe that you have violated the conditions of your release, and if so, whether to release you or hold you for a revocation hearing. If no probable cause is found, you will be released and either reinstated to supervision, or discharged from further supervision if your sentence has expired. ·

At your probable cause hearing and any subsequent revocation hearing you will be apprised of the information supporting the violation charges. You may present documentary evidence and voluntary witnesses on your behalf. If you deny the charge(s) against you, you may request the presence of those persons who have given information upon which the charges are based. Such adverse witnesses will be made available for questioning unless good cause is found for their non-appearance.

You may be represented by an attorney or, if you are unable to pay for such representation, an attorney will be appointed for you if you fill out and promptly return a request for representation to the hearing examiner.

If, after a revocation hearing, you are found to have violated the conditions of your release the Commission may: (1) restore you to supervision, and, if appropriate, (a) reprimand you; (b) modify your conditions of supervision; or (c) refer you to a residential community treatment center for the remainder of your sentence; or (2) revoke your parole, mandatory release, or supervised release in which case the Commission will also decide when to consider you for further release.

If the Commission revokes your parole, mandatory release, or supervised release you will not receive credit toward service of your sentence for time spent on parole/mandatory release/supervised release.

**CHARGES:**

**Charge No. 1 - Law Violation. Assault.** On 8-27-06, the releasee punched the victim in the chest and upper body area multiple times with a closed fist. The victim was granted an Order for Civil Protection. The releasee was arrested by the Metropolitan Police Department for the above-cited offense on 10-12-06. This charge is based on the information contained in the violation report dated 11-6-06 from supervising officer Tiffany Wright and a police report dated 10-12-06. Status of Custody/Criminal Proceedings: There is no avaialbe information in PRISM regarding the charge.

**I ADMIT [   ] or DENY [   ] this charge.**

*actively    activate*

---

**EXHIBIT** G

**Colts, Ernest**
**Reg. No. 32042-007    DCDC No. 286-878**



**Charge No. 2 - Law Violation. Assault.** On 10-9-06, the releasee struck the victim in the chest with a closed fist. He struck the victim a second time in the chest with a closed fist causing her to fall on the ground. Then he pulled the victim's hair causing her to fall on the ground, grabbed her by the neck and began choking her. The victim was granted an order for Civil Protection. The releasee was arrested by the Metropolitan Police Department for the above-cited offense on 10-12-06. This charge is based on the information contained in the violation report dated 11-6-06 from supervising officer Tiffany Wright and a police report dated 10-12-06. Status of Custody/Criminal Proceedings: There is no available information in PRISM regarding the charge.

**I ADMIT [ ] or DENY [ ] this charge.**

**Charge No. 3 - Law Violation. Violation of an Order for Civil Protection.** On 10-12-06, the releasee was arrested by the Metropolitan Police Department for the above-cited offense on. This charge is based on the information contained in the violation report dated 11-6-06 from supervising officer Tiffany Wright and a police report dated 10-12-06. Status of Custody/Criminal Proceedings: There is no available information in PRISM regarding the charge.

**I ADMIT [ ] or DENY [ ] this charge.**

**Probable Cause Hearing Is Required**

Warrant Issued.................. **February 22, 2007**

**Warrant Recommended By:**

*Rhonda A. Shelton*

**Rhonda A. Shelton, Case Analyst**
**U.S. Parole Commission**

Community Supervision Office Requesting Warrant: **General Supervision Unit X-Team 21, 1230 Taylor Street**

## III. Review of Charges:

**Charge No. 1 - Law Violation. Assault.**

[ ] ADMITS          [X] DENIES

The Subject's Response: _attorney asian says this same victim claimed to have been assaulted earlier. at the revocation hearing she admitted she makes things up._

[X] **Probable Cause Found.** After considering the violation report dated 11-6-06, and the subject's response to the charge at this hearing, the evidence supporting the charge is sufficiently specific and credible for the existence of probable cause for Charge No. 1. Additional reasons for probable cause finding: _____

[ ] **No Probable Cause Found**

**Charge No. 2 - Law Violation. Assault.**

[ ] ADMITS          [X] DENIES

The Subject's Response: _____

[ ] **Probable Cause Found.** After considering the violation report dated 11-6-06, and the subject's response to the charge at this hearing, the evidence supporting the charge is sufficiently specific and credible for the existence of probable cause for Charge No. 2. Additional reasons for probable cause finding: _____

I certify that I have reviewed this hearing summary.

*Gregory E. Price*

Gregory E. Price, Hearing Examiner

GEP/SM w
June 22, 2007

**Executive Reviewer's Comments:** Denton 7/16/07

I have listened to the tapes of this hearing and do not recommend that the hearing be continued in an attempt to have the victim return to complete the cross-examination regarding Charge No. 2. The victim had completed testifying and the attorney had completed the cross-examination for Charge No. 1. Although the victim had completed outlining the sequence of events for Charge No. 2, the attorney was unable to complete the cross examination after the victim became angry and refused to answer any more questions because she was unhappy with the attorney's line of questioning. The victim first became upset during cross-examination for Charge No. 1 and wanted to leave, but was able to regain her control and continue with the hearing. The second charge was especially emotional for the victim since she had a miscarriage as a result of the assault. If the Commission were to continue the hearing and re-subpoena the victim/witness, based on my hearing the tapes, I find that it would be highly unlikely that she would appear to testify.

Although the victim spoke softly and it was hard to hear some of her statements, I found the victim to be consistent in her statements and credible. She acknowledged that she had lied at the last revocation hearing when she recanted her statements that subject had assaulted her previously. She provided a credible explanation for recanting her previous statements that is consistent with actions taken by victims of on-going physically abusive relationships. I found that her testimony regarding Charge No. 2 was consistent with her earlier statements and had no reason to believe that she was not being truthful.

I disagree with the examiner that this is a bottom of the guidelines case and recommend release after service of 22 months, the top of the range. Subject has a history of assaultive behavior, both related to the victim and the instant offenses involved from 5 to 9 carjackings and armed robbery. During the hearing, the attorney made objections that were not listed under the procedural considerations. Although not mentioned in the summary, the objections were resolved. The attorney was adamant that there was a police report for the behavior outlined in Charge No. 1. The tapes indicate the examiner contacted both the Commission and CSOSA on this matter and there was not a report completed. The attorney also felt that she was not given access to all documents that related to the charges. It was explained to the attorney that she was given all the documents the Commission had, but she felt there were documents available that the Commission should have gotten. Although the attorney was not satisfied with the examiner's explanation concerning the documents, the objection was overruled and the hearing continued. In my review of the file, I also did not find any police report related to the August 2006 assault and thus it was not evidence that the Commission had in its possession and therefore was not used as a basis to revoke supervised release. The examiner appropriately overruled this objection.

## GENERAL CONDITIONS

ᒲ.C. 1.  A.  You must go directly to Washington, D.C. and appear in person at the Intake Office of the Court Services and Offender Supervision Agency for the District of Columbia (CSOSA), 300 Indiana Avenue, N.W., Washington, D.C. 20001. If you are unable to appear in person at that office within three days of release, you must appear in person at the United States Probation Office nearest to you and follow the instructions of the duty officer.

       B.  If you are not released to the community after your parole, you must follow the instructions in 1.A. above when you are released to the community.

ᒲ.C. 2.  You must not leave the Washington, D.C. metropolitan area without the written permission of the officer supervising you. The Washington, D.C. metropolitan area consists of the District of Columbia, Prince Georges and Montgomery Counties in Maryland, Arlington and Fairfax Counties in Virginia, and the Cities of Alexandria, Fairfax, and Falls Church in Virginia. For the purpose of applying all conditions of release, "the officer supervising you" includes any supervision officer assisting, substituting for, or acting on behalf of the officer assigned to your supervision.

ᒲ.C. 3.  You must, between the first and third day of each month, make a written report to the officer supervising you. In addition, you must meet with the officer supervising you at such times and in such a manner as that officer directs, and provide such information as that officer requests. All information that you provide to the officer supervising you must be complete and truthful.

ᒲ.C. 4.  You must notify the officer supervising you within two days of (A) an arrest or questioning by a law-enforcement officer, (B) a change in your residence, or (C) a change in your employment.

ᒲ.C. 5.  You must permit the officer supervising you to visit your place of residence and your place of business or employment.

ᒲ.C. 6.  You must permit the officer supervising you to confiscate any material that officer believes may be contraband and that is in plain view in your possession, including in your residence, place of business or employment, and vehicle.

ᒲ.C. 7.  You must submit to a drug or alcohol test whenever ordered to do so by the officer supervising you.

ᒲ.C. 8.  You must not violate any law and must not associate with someone else who is violating any law.

    9.  You must not possess a dangerous weapon, which includes ammunition.

ᒲ.C. 10.  You must not drink alcohol to excess and must not illegally use or possess a controlled substance. You must not frequent a place where you know a controlled substance is illegally used or distributed.

ᒲ.C. 11.  You must not associate with a person who has a criminal record without permission from the officer supervising you.

ᒲ.C. 12.  You must not enter into an agreement to act as an informant or undercover agent for a law-enforcement agency without permission from the Commission.

ᒲ.C. 13.  You must make a diligent effort to work regularly, unless excused by the officer supervising you, and to support any legal dependent.

ᒲ.C. 14.  You must make a diligent effort to satisfy any fine, restitution order, court costs or assessment, or child-support or alimony payment to which you are subject. You must provide financial information relevant to the payment of such a financial obligation that is requested by the officer supervising you. If you are unable to pay such a financial obligation in one sum, you must cooperate with the officer supervising you to establish an installment-payment schedule.

ᒲ.C. 15.  If your term of supervised release was imposed because of a conviction for a domestic-violence crime, and that conviction is your first conviction for such a crime, you must, as directed by the officer supervising you, attend an approved offender-rehabilitation program if such a program is readily available within a 50-mile radius of your residence.

ᒲ.C. 16.  If you are required by law to report and register as a sex-offender, you must comply with that law.

ᒲ.C. 17.  You must provide a DNA sample if the officer supervising you determines that collection of such sample is required by law.

ᒲ.C. 18.  You must participate in an Employment Readiness Program if so directed by the officer supervising you.

ᒲ.C. 19.  If you are being supervised by CSOSA, you must submit to the sanctions imposed by the officer supervising you within the limits established by an approved schedule of graduated sanctions.

ᒲ.C. 20.  If so directed by the officer supervising you, you must notify a person of your criminal history or characteristics to inform that person of a risk of harm.

---

**GARY BARNES, APPELLANT v. DISTRICT OF COLUMBIA BOARD OF PAROLE, et al., APPELLEES**
**DISTRICT OF COLUMBIA COURT OF APPEALS**
**759 A.2d 1073;2000 D.C. App. LEXIS 261**
**No. 98-SP-521**
**November 1, 1999, Submitted**
**September 28, 2000, Decided**

---

**Editorial Information: Prior History**

Appeal from the Superior Court of the District of Columbia. (Hon. Iraline G. Barnes, Trial Judge).

**Disposition:** Affirmed.

**Counsel**          Gary Barnes filed a brief pro se.
                     John M. Ferren, Corporation Counsel at the time the brief was
          filed, Charles L. Reischel, Deputy Corporation Counsel, and Mary L. Wilson, Assistant
          Corporation Counsel, were on the brief for appellees.

**Judges:** Before TERRY, Associate Judge, and PRYOR and MACK, Senior Judges.

**Opinion**

**Opinion by:**          TERRY

{759 A.2d 1074} TERRY, *Associate Judge*: Appellant Barnes appeals from the denial of his petition for a writ of habeas corpus, in which he challenged the revocation of his parole by the District of Columbia Board of Parole ("the Board"). He claims that the Board improperly considered evidence that he had been charged with first-degree murder since the charge was later dropped. Finding this argument unpersuasive, we affirm.

I

In 1985 Barnes was sentenced to an aggregate prison term of eight to twenty-five years for armed kidnapping, armed robbery, unauthorized use of a vehicle, destruction of property, and carrying a pistol without a license. The Board first granted Barnes parole on September 4, 1991. As a special condition of his release, Barnes agreed to participate in a narcotics surveillance program. On February 13, 1996, the Board issued a warrant for Barnes' arrest based on his violation of parole. The Board made a probable cause determination that Barnes had failed to attend two scheduled meetings with his parole officer and had failed to participate in the narcotics surveillance program, in that he had not submitted to drug testing, since September 25, 1995.

Thereafter, on April 12, 1996, Barnes and another man named Singletary were arrested and charged with first-degree murder. Barnes' parole violator warrant was executed soon thereafter, and he was taken into custody under the warrant. The murder charge was subsequently dismissed on April 29. The Board then informed Barnes that it would conduct a parole revocation hearing based on his failure to report to his parole officer as directed and his failure to submit to drug testing.

On May 10, 1996, Barnes appeared before the Board for a parole revocation hearing. He was represented by counsel but presented no witnesses. He did admit, however, that he had failed to comply with the narcotics surveillance by making himself available for urinalysis. As for twice failing to

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

report to his parole officer, he explained that "it was an 'oversight' since he had lost his job and was in the process of finding a new one." The Board found that Barnes had violated his parole, but postponed a final decision on revocation so that it could consider possible criminal violations of parole arising out of the dismissed murder charge.

At the next hearing on July 30, 1996, two witnesses testified and implicated Barnes in the murder. 1 Carmelita Metz, Barnes' former girl friend, testified that she asked Barnes and Singletary to lure the victim to an apartment building. All three of them then repeatedly stabbed the victim and ransacked his apartment looking for drugs and money. 2 The second witness, not identified by name in the record, testified that he had been asked by Ms. Metz to participate in the murder but declined. This witness also testified that he came to the apartment later that day, and Ms. Metz "showed him where they had hid the body."

Barnes, again represented by counsel, denied all the allegations and said that the unidentified witness who named him as a participant in the murder had been found not to be credible, and for that reason the murder charge had been dropped. At the conclusion of the hearing, the Board found that "the preponderance of the evidence supports the finding that [Barnes] committed {759 A.2d 1075} first degree murder and illegally used a deadly weapon." Accordingly, on August 1, 1996, the Board issued an order revoking Barnes' parole "for criminal and noncriminal violations." The criminal violations were listed as "failing to obey all laws" and "using a deadly weapon."

Thirteen months later, on September 9, 1997, Barnes filed in the Superior Court a petition for a writ of habeas corpus, asserting that he had been denied due process because the Board had admitted hearsay testimony, and that the dismissal of the murder charge established that the evidence relating to the murder was insufficient or unreliable. The Board filed a detailed response, along with fourteen exhibits, refuting Barnes' allegations. The court then denied the petition, and Barnes noted this appeal. He argues on appeal that the Board abused its discretion in revoking his parole because there was insufficient evidence that he illegally used a weapon or failed to obey all laws.

II

"In order for a writ of habeas corpus to issue . . . 'the facts set forth in the petition [must] make a prima facie case.' " *Bennett v. Ridley*, 633 A.2d 824, 826 (D.C. 1993) (citing D.C. Code § 16-1901 (a) (1997)). When a habeas corpus petition challenges a revocation of parole, however, the court does not review the merits of the Board's decision to revoke, but is "limited to a review of the procedures used by the Board in reaching its decision. " *Smith v. Quick*, 680 A.2d 396, 398 (D.C. 1996) (citing *Bennett*, 633 A.2d at 826); *accord, Brown-Bey v. Hyman*, 649 A.2d 8, 9 (D.C. 1994); *In re Tate*, 63 F. Supp. 961, 962 (D.D.C.) (court may consider only "whether the petitioner has been deprived of his legal rights by the manner in which the revocation hearing was conducted"), *aff'd sub nom. Fleming v. Tate*, 81 U.S. App. D.C. 205, 156 F.2d 848 (1946).

In this case, Barnes admitted violating two conditions of his parole by failing to present himself for drug testing and failing to report to his parole officer. Because of these violations, the Board convened a parole revocation hearing in May 1996. There is no dispute that the Board gave Barnes notice of that hearing, advised him of his rights, and provided him with counsel. There is nothing in the record to suggest that Barnes was deprived of his legal rights by the manner in which that hearing was conducted. Moreover, his failure to comply with the original release terms would have been sufficient in itself, under established regulations, to justify the revocation of his parole. *See* 28 DCMR § 219.6 (e) (1987). The Board, however, decided to postpone its revocation decision so that it could also consider any instances of misconduct related to the intervening murder charge.

At the second hearing in July, Barnes was again provided with notice of the hearing and informed of his rights. In addition, he was represented by counsel who, as far as we can tell from the record, participated fully in the proceedings. The Board found, again by a preponderance of the evidence, that Barnes had violated parole by using an illegal weapon. There was no error in this ruling. Even though

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the murder charge against Barnes was dropped, it was permissible for the Board to consider, as it did, the facts underlying that charge. *See Wright v. United States*, 262 A.2d 350, 352 (D.C. 1970) (in proceedings for revocation of probation or parole, when the defendant has been rearrested and charged with an additional offense, "considerations of dangerousness are appropriately taken into account"); *Maddox v. United States Parole Commission*, 821 F.2d 997, 999 (5th Cir. 1987) (Commission may consider uncharged criminal activity in revoking parole); *Arias v. United States Parole Commission*, 648 F.2d 196, 200 (3d Cir. 1981) (upholding revocation based in part on pre-sentence report stating facts relating to dismissed indictment); *Schuemann v. Colorado State Board of {759 A.2d 1076} Adult Parole*, 624 F.2d 172, 174 (10th Cir. 1980) (revocation may be based on new criminal act even if conviction of that crime is reversed on appeal, so long as reversal "was not based on a finding of innocence"); *United States v. Gardiner*, 666 F. Supp. 267, 270-271 (D. Me. 1987) (Commission may consider "unadjudicated alleged criminal conduct" as basis for revoking parole).

Barnes' argument is an attack on the merits of the Board's decision, which is not subject to judicial review. *Smith v. Quick*, 680 A.2d at 398; *Bennett*, 633 A.2d at 826. Because he has failed to show that he was deprived of his legal rights by the manner in which the revocation hearing was conducted, the denial of his habeas corpus petition is *Affirmed.*

### Footnotes

1

There is no transcript of this hearing in the record. Our summary of the proceedings and the testimony is based on the handwritten notes of a Board member taken during the hearing, which is in the record as an exhibit.

2

The murder victim was stabbed fifty-one times. According to the record of Metz's testimony, "Barnes started the stabbing and Metz and Singletary joined in."

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

> **Dewey Miles Mullen, Jr., Appellant, v. United States Parole Commission and J.S. Petrovsky, Warden, United States Medical Center for Federal Prisoners, Appellees**
> **UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT**
> **756 F.2d 74; 1985 U.S. App. LEXIS 29266**
> **No. 84-1970**
> **March 5, 1985, Decided**

## Editorial Information: Prior History

Appeal from the United States District Court for the Western District of Missouri, William R. Collinson, Judge.

**Summary:**

**Posture:**
Appellant inmate sought review of a judgment from the United States District Court for the Western District of Missouri, which dismissed his petition for a writ of habeas corpus.

**Cite overview:**
The United States Parole Commission's independent finding that the inmate violated the conditions of his parole by possessing a firearm was unaffected by the dismissal of the state charge arising out of the same conduct.

**Overview:**
The inmate was placed on parole from a conviction for bank robbery and a consecutive sentence received for escape. He was charged with parole violation when he was arrested and was charged in the state court with breaking and entering and possession of a firearm. Appellee United States Parole Commission (Commission) revoked the inmate's parole after a hearing. Upon the prosecutor's motion, the state weapons charge was subsequently dismissed. The inmate filed a petition for a writ of habeas corpus claiming that the Commission was precluded from using the dismissed state charge as evidence of new criminal conduct. The district court dismissed the habeas corpus petition. On appeal, the court affirmed the dismissal. The court found that the prosecutor's assessment that the evidence was insufficient to prove a charge was irrelevant to the Commission's consideration of the charge as new criminal parole violator conduct. The court held that the Commission correctly held that its independent finding that the inmate violated the conditions of his parole by possessing a firearm was unaffected by the dismissal of the state charge arising out of the same conduct.

**Outcome:**
The court affirmed the judgment of the district court, which dismissed the inmate's petition for a writ of habeas corpus.

**Concepts:**
28 C.F.R. § 2.19(c) provides that the United States Parole Commission shall not consider in any determination, charges upon which a prisoner was found not guilty after trial unless reliable information is presented which was not introduced as evidence at such trial.

New criminal conduct may be determined either by a new federal, state or local conviction or by an independent finding by the United States Parole Commission at a revocation hearing. 28 C.F.R. § 2.21(b)(1).

**Counsel**     Ty Gaither, Springfield, Missouri, for Appellant.
                Michael A. Jones, AUSA, Springfield, Missouri, for Appellee.
**Judges:** Lay, Chief Judge, J. R. Gibson, and Fagg, Circuit Judges.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Judges:** Lay, Chief Judge, J. R. Gibson, and Fagg, Circuit Judges.

## Opinion

**Opinion by:**       FAGG

**{756 F.2d 74}** FAGG, Circuit Judge.

Dewey Miles Mullen appeals from the district court's denial of his petition for writ of habeas corpus. He contends that the United States Parole Commission's refusal to reconsider his reparole date "was an arbitrary and capricious" abuse of its discretion. The district court dismissed the petition without prejudice. We affirm.

In May 1981, Mullen was placed on parole from a conviction for bank robbery received in 1976 and a consecutive sentence received for escape in 1979. In July 1981, Mullen was arrested in Oklahoma and charged in state court with breaking and entering and unlawful possession of a firearm. In February 1982, Mullen was taken into federal custody and charged with parole violation. In June 1982, the United States Parole Commission conducted its own hearing and revoked Mullen's parole after determining by a preponderance of the evidence that he had engaged in new criminal conduct of high severity, namely **{756 F.2d 75}** the illegal possession of a firearm. Mullen's presumptive reparole date was set for October 1985. In March 1983, upon the motion of the prosecuting attorney, the state weapons charge was dismissed by a state judge for "lack of prosecutorial merit."

Mullen claims in this appeal that the dismissal of the state weapons charge for lack of prosecutorial merit is equivalent to a judicial determination of not guilty. According to Mullen, 28 C.F.R. § 2.19(c) precludes the use of this charge as a basis for a finding of new criminal conduct by the Parole Commission. Section 2.19(c) provides that "the Commission shall not consider in any determination, charges upon which a prisoner was found not guilty after trial unless reliable information is presented which was not introduced as evidence at such trial* * *." Mullen argues that this regulation necessarily encompasses a dismissal for lack of prosecutorial merit.

We disagree. There is a significant difference between a judicial dismissal for lack of merit at the behest of a prosecutor and a finding of not guilty after trial. A prosecutor's assessment that the evidence is insufficient to prove a charge is irrelevant to the Parole Commission's consideration of the charge as new criminal parole violator conduct. In the context of this case, the state court dismissal of Mullen's weapons charge for lack of merit on a prosecutor's motion is nothing more than an unadjudicated offense. *See Edwards v. United States*, 574 F.2d 937, 943–44 (8th Cir. 1978). Commission regulations provide that "new criminal conduct may be determined either by a new federal, state or local conviction or by an independent finding by the Commission at [a] revocation hearing." 28 C.F.R. § 2.21(b)(1) . We hold that the Parole Commission correctly held that its independent finding that Mullen violated the conditions of his parole by possessing a firearm is unaffected by the dismissal of the state charge arising out of the same conduct.

The judgment of the district court dismissing Mullen's habeas petition is affirmed.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Bill D. Maddox, Petitioner-Appellant, v. United States Parole Commission, Respondent-Appellee
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
821 F2d 997821 F.2d 997; 1987 US App LEXIS 96431987 U.S. App. LEXIS 9643
No. 87-1036
June 25, 1987
Editorial Information: Subsequent History
As Amended July 26, 1987.
Editorial Information: Prior History
Appeal from the United States District Court for the Western District of Texas.
Summary:
Posture:
Appellant sought review of an order from the United States District Court for the Western District of Texas, which affirmed
the decision of appellee parole commission, which, in determining appellant's sentence for trafficking and distributing
large amounts of marijuana, ordered appellant to serve four months more than the maximum guideline range.
Cite overview:
Appellant's sentence of four months beyond the maximum guideline range was appropriate where appellant's offense-
severity rating was not improper, and the consideration of the amount of marijuana seized from appellant was not double-
counting.
Overview:
Appellant was convicted in several states for various trafficking and distribution crimes involving very large amounts of
marijuana. At his initial parole hearing, appellant was issued a category six offense-severity rating and it was
recommended that appellant serve the maximum 52-month period established by the guidelines. Appellee parole
commission disagreed and ordered appellant to serve four months more than the guideline range because his offense
behavior involved several aggravating factors. Appellant sought review of appellee's decision. The court affirmed and
held that appellee's decision was based on appropriate information and was not flagrant, unwarranted, or unauthorized,
that appellee's offense-severity rating for appellant was not improper, that appellee's consideration of the amount of
marijuana seized from appellant did not constitute double-counting, that the quantity of marijuana was a valid factor in
basis of appellee's decision, and that appellee had good cause to go outside the guidelines.
Outcome:
The court affirmed appellant's sentence because appellee's decision was based on appropriate information, appellee's
offense-severity rating for appellant was not improper, the consideration of the amount of marijuana seized from appellant
did not constitute double-counting, and appellee had good cause to go outside the guidelines.
Concepts:
Congress has given the parole commission absolute discretion concerning matters of parole, and has dictated that the
parole commission may use all relevant, available information in making parole determinations.
See 28 C.F.R. § 2.19(c).
18 U.S.C.S. § 4207 contains a nonexhaustive list of information that the parole commission may consider in making
parole determinations.
As with sentencing courts, the only constraints on the information that may be considered by the parole commission are
constitutional. Specifically, the parole commission may consider dismissed counts of an indictment, hearsay evidence,
and allegations of criminal activity for which the prisoner has not even been charged.
The parole commission's regulations provide that if the prisoner disputes the accuracy of the information presented, the
parole commission shall resolve such dispute by the preponderance of the evidence standard. However, it is not the
function of the courts to review the discretion of the parole board in the denial of application for parole or to review the
credibility of reports and information received by the parole board in making its determination.
The court cannot disturb a decision by the parole commission setting the time for parole release absent a showing that
the action is flagrant, unwarranted, or unauthorized. So long as due process requirements are observed and the parole
commission has acted within its statutory authority, the court will not usurp the parole commission's position as
established in the statutory scheme enacted by Congress.
Although the parole commission's decisions must have a factual basis, judicial review is limited to whether there is some
evidence in the record to support the parole commission's decision.
Under 28 C.F.R. § 2.20, a marijuana offense is properly characterized as category six if the prisoner had a nonperipheral
role in an offense that involved 20,000 pounds or more of marijuana. If the offense involved less than 20,000, but more
than 2,000, pounds of marijuana or the prisoner had only a peripheral role, his offense behavior is properly rated as
category five.
Under 28 C.F.R. § 2.20, a state offense may be used to establish a prisoner's offense-severity rating if the state offense
is sufficiently related to the federal offense in time or nature.
Under 18 U.S.C.S. § 4206 (c), the parole commission, for good cause, may go outside its guidelines, provided that the
prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the
information relied upon.
Good cause is defined as substantial reason and includes only those grounds put forward by the parole commission in
good faith and which are not arbitrary, irrational, unreasonable, irrelevant or capricious. It includes such factors as
whether the prisoner was involved in an offense with an unusual degree of sophistication or planning, or has a lengthy
prior record, or was part of a large scale conspiracy or continuing criminal enterprise.
The parole commission cannot use aggravating factors to continue a prisoner beyond the guidelines when such factors
were used initially to place the prisoner in a particular severity category. This amounts to impermissible double-counting.
Double-counting also occurs when the parole commission uses the same information that it used to establish a prisoner's
salient factor score to support its decision outside the guidelines.
To determine whether double-counting has occurred, the crucial comparison is between the factors used to place a
defendant in a severity category and the factors used to continue a prisoner beyond the guidelines. Thus, if the parole
commission failed to take note of a particular element of the conviction in determining a severity category, it would not

abuse its discretion by considering that element as an aggravating factor.
The parole commission does not double-count when it focuses on the number of the prisoner's prior convictions to establish his salient factor score but considers the nature of those convictions to support its decision outside the guidelines.

Counsel          Bill D. Maddox, (Pro Se), for Appellant.
                 Helen M. Eversberg, USA, Mark M. Greenberg, AUSA, for Appellee.

Judges: Rubin, Randall, and Higginbotham, Circuit Judges.

Opinion
Opinion by:        RUBIN
{821 F.2d 998} ALVIN B. RUBIN, Circuit Judge:
The issue is whether the Parole Commission's decision classifying a federal prisoner and fixing his parole date should be reversed. We decline the request to do so because the Parole Commission acted within the discretionary bounds granted it by Congress.

I.

Bill D. Maddox was convicted in the United States District Court for the Western District of Tennessee of conspiring to distribute marijuana, an offense involving about 11,000 pounds of marijuana, and aiding and abetting the possession of marijuana with intent to distribute. He was sentenced to two concurrent ten-year prison terms.
Thereafter Maddox was convicted in the Superior Court of Onslow County, North Carolina, of conspiring to traffic in marijuana, a separate offense, involving 85,000 pounds of marijuana. He was sentenced to a prison term of not less than twelve years or more than sixteen years to be served concurrently with his federal prison sentence.
After Maddox had commenced serving his federal prison sentence at the La Tuna Federal Correctional Institution near El Paso, Texas, his initial parole hearing was held. In a prehearing assessment report, Maddox was issued a category six offense-severity rating because the offense "involved a non-peripheral role in possession with intent to distribute in excess of 20,000 pounds of marijuana." The quantity of marijuana was calculated by combining the marijuana involved in both the federal and state convictions. The report gave Maddox a salient factor score of "10" ("very good" parole prognosis). The corresponding Parole Commission guidelines for that offense-severity rating and salient factor score indicated a recommended sentence of 40-52 months. The report also noted a comment by the sentencing judge in an AO-235 report which states:
"Substantial punishment indicated for this man's important role in a large marihuana conspiracy in Florida resulted in hundreds of thousands dollars worth of marihuana shipped to the Western District of Tennessee (and probably many other areas). Tapes indicated that this defendant assisted in "laundering" under a major criminal operator, Donald Raulerson, in the Fort Pierce area of Florida.
This man played a very substantial role in continuing drug operations. After he was indicted [sic] on the drug offenses pertaining to the Western District of Tennessee, he was observed on video tape continuing to discuss drug operations, disposal of large amounts of cash to foreign countries, and in assisting another in the "laundering" of large amounts of cash. There would be no reason to indicate that the defendant should have early parole: indeed, to the contrary."

The hearing panel recommended that Maddox be required to serve the maximum 52-month period established by the guidelines.
{821 F.2d 999} The Regional Parole Commission disagreed with the hearing panel and ordered that Maddox be required to serve four months more than the guideline range. The Commission found that a decision above the guidelines was warranted because:
After review of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense behavior involved the following aggravating factors: The overall offense behavior involved the distribution of Marijuana in an amount approximately 4-1/2 times greater than that established by the base amount of the guidelines on addiction. You continued to engage in drug trafficking [sic] after being indicted on the Federal drug charges. (Emphasis added.)

The National Appeals Board affirmed the Regional Commission's decision.
Maddox contends that (1) the Parole Commission's decision was vague and uncertain; (2) his offense-severity rating should have been category five because he was convicted in federal court of an offense involving only 11,000 pounds of marijuana; and (3) the Parole Commission did not have good cause to go outside the guidelines because (a) he was not provided with a copy of the guidelines on addiction (b) the guidelines on addiction were not in existence at the time of his conviction and thus application of these guidelines to him would violate the Constitution's ex post facto clause, and (c) the Parole Commission used the same information to establish his offense-severity rating and to support its decision above the guidelines. There are no "guidelines on addiction." This is a clerical error in the Regional Commission's decision. This obviously meant the guidelines for determining the offense-severity rating. In his later reply to the government's response, Maddox argued that the Parole Commission erroneously relied on the sentencing judge's comments in an AO-235 form to support its decision because the judge's comments are unsubstantiated hearsay.

II.

Congress has given the Parole Commission absolute discretion concerning matters of parole.1 Congress has dictated that the Parole Commission may use all relevant, available information in making parole determinations.2 The regulations provide, "The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond."3

18 U.S.C. § 4207 contains a nonexhaustive list of information that the Commission may consider in making parole determinations. As with sentencing courts, the only constraints on the information that may be considered by the Parole Commission are constitutional. Specifically, the Commission may consider dismissed counts of an indictment,4 hearsay evidence,5 and allegations of criminal activity for which the prisoner has not even been charged.6 The regulations provide, "If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard."7 However, "it is not the function of the courts to review the discretion of

the Board in the denial of {821 F.2d 1000} applic... ... for parole or to review the credibility of reports and information received by the Board in making its determination." Thus, as this court has observed,

this Court cannot disturb a decision by the Commission setting the time for parole release absent a showing that the action is "flagrant, unwarranted, or unauthorized." ... e v. United States Parole Commission, 651 F.2d 1083, 1085 (5th Cir.1981); United States v. Norton, 5.9 F.2d 100..., ... 83 (5th Cir. 1976), cert. denied, 429 U.S. 1103, 97 S. Ct. 1129, 51 L. Ed. 2d 553 (1977). So long as due process re... ...ments are observed and the Commission has acted within its statutory authority, we will not usurp the Commi... 's position as established in the statutory scheme enacted by Congress.[9]

Although the Commission's decisions must have ... ...tual basis, judicial review is limited to whether there is "some evidence" in the record to support the Commission decision.[10]

**III.**

Maddox contends that his category six offense-se... ...ty rating was unwarranted. A marijuana offense is properly characterized as category six if the pr soner had ... peripheral role in an offense that involved 20,000 pounds or more of marijuana. If the offense involved l ss than 20,... (but more than 2,000) pounds of marijuana or the prisoner had only a peripheral role, his offense behavior is properly r ... d as category five.[11] Maddox contends that his offense-severity rating should have been category five because h... ...eral conviction involved only 11,000 pounds of marijuana. Maddox's offense behavior wa ... ...s categor... ...because the Parole Commission combined the 11,000 pounds of marijuana from the federal conviction with the 85,... ...pounds from the state conviction. A state offense may be used to establish a prisoner's offense-severity r ting if the state offense is sufficiently related to the federal offense in time or nature.[12] Maddox's fed ... ...ense involved conduct that took place between May 1, 1980, and February 2, 1981. The state offense took place on F bruary 1, 1981. ...e two offenses were sufficiently related in time and nature. The Commission's decision therefore w... based on ... priate information and was not "flagrant, unwarranted, or unauthorized." Accordingly, the P... e Commiss... offense-severity rating for Maddox was not improper.[13]

**IV.**

The Parole Commission for "good cause" may go ... side its guidelines, provided that "the prisoner is furnished written notice stating with particularity t e rea ons for its ... rmination, including a summary of the information relied upon."[14] "'Good cause' means substant trou n and incl ... only those grounds put forward by the Commission in good faith and which are not arbitrary, irrational, unreasonabl ... irrelevant or capricious."[15] It includes such factors as "whether . . . the prisoner was involved in an offense with an un ... al degree of sophistication or planning, or has a lengthy prior record, or was part of a {821 F.2d 1001} large s ... nspiracy or continuing criminal enterprise."[16] The Parole Commission's de ...ion f... ng a criti... ...onfinement in excess of the time determined by the guidelines was based, in part, on its finding t t Nad ox "contin... engage in drug trafficking [sic] after being indicted on the Federal drug charges." This finding w s b ... on th s ...ng judge's statements contained in an AO-235 form. Maddox contends that this finding do... ot c... titute ... use because it is based on hearsay. As stated previously, the Par... Com ission m ... sider hearsay evidence. The Commission satisfied the statutory and due process requirement ... ...n ng d... itside the guidelines; it specified the reasons underlying its determination and afforded M ... opportun... ...ppeal.[17] The Commission acknowledged Maddox's claim that its decision was based on err... ...mation but ...cted his claim because it was not supported by "persuasive evidence to refute the accur ... ...inform... which his parole determination was made. Maddox presents no objective evidence to suppor .. ...tions that ...d not continue to engage in drug trafficking after his federal indictment. Giving due regard to the Commission... ...ibility choices.[18] its decision to consider the sentencing judge's statements is based on "some evidence." Becau... ...e sentencing judge's comments demonstrate that Maddox was part of a large-scale "continuing cri inal nterpr se," it ... rovide a valid basis for a decision outside the guidelines.

**V.**

"The Parole Commission . . . c nnot one aggrava ... ...factors to continue a prisoner beyond the guidelines when such factors were used initially to p ... ...r y discover in ... ...ticular severity category."[19] This amounts to impermissible double-counting. Likewise, d ...le c ng occur ... ...n the Parole Commission uses the same information that it used to establish a prisoner's s l ... s sor to s ...its decision outside the guidelines.[20] In Romano v. Baer,[21] the Seventh Circuit set forth a f ... ...u y to de ... ...other double-counting has occurred:

To determine whether doub  ...t n has c ... ...the crucial comparison is between the factors used to place a defendant in a severity cat ... ...s facto... ...to continue a prisoner beyond the guidelines. . . . Thus, if the Parole Commission failed t ... ...c of a j ... ...loment of the conviction in determining a severity category, it would not abuse its discret ... ...erin gui ...nt as an aggravating factor.[22]

The Romano standard is a ...cre de ...t d state ... ...f the same standard for double-counting set forth by this Court in Stroud v. United States ... ...ion.[23] I ...d, the Court held that the Parole Commission does not double-count when it focuses on ... ...on t the p ...rior convictions to establish his salient factor score but considers the nature of those convictions ... ...ar rt its c ... outside the guidelines. The Parole Commission's de ... ...s bas d ... n the finding that the state and federal convictions involved "the distribution of Marijuana in an ... ...r appro ... ...1/2 times greater" than the amount needed for a category six rating. Maddox contends that ... r t C ...ouble-counted because it used the amount of marijuana from both convictions to establish his of ... ...se ...ng ... to support its decision above the guidelines. {821 F.2d 1002} In establish ... ...d s of a... ...rity rating the Parole Commission considered the 96,000 pounds of marijuana only to the ex e ... ...1 1 fe ... ...ounds requirement. The Parole Commission's decision, however, was based on the fact th t t ... ...n 1 ...ubst ... ...ana is 4-1/2 times the amount required for a category six rating. This does not constitute d ou ... ...ng.[24] Ma... ...this factor is a valid basis for the decision because it shows that Maddox was a member of a v ... s ...cl muru ... distribution operation. The Parole Commission had good cause to go outside the guidelines.

For these reasons, the decision ... ...FFIRM D.