UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERNEST COLTS,

    Petitioner,

        v.                                                              Civil Action No. 07-1363 (JDB)

U.S. PAROLE COMMISSION,

    Respondent.

**MEMORANDUM OPINION**

This matter is before the Court on a petition for a writ of habeas corpus. Having considered the petition, the United States Parole Commission's opposition, and petitioner's response, the Court will deny the petition.[1]

I. BACKGROUND

On February 22, 2007, the United States Parole Commission ("USPC") issued a violator warrant for petitioner's arrest. U.S. Parole Commission's Opposition to Petitioner's Petition for a Writ of Habeas Corpus ("Resp't Opp'n"), Ex. G (Warrant Application).[2] The USPC charged petitioner with the following law violations: (1) assault on Annie Brown on August 27, 2006; (2)

---

[1] Petitioner has submitted and the Clerk has docketed two letters dated September 5, 2007 [Dkt. # 9-10] and one letter dated September 15, 2007 [Dkt. #11], and the Court considers these letters together as petitioner's response to the United States Parole Commission's opposition to his petition for a writ of habeas corpus.

[2] At that time, petitioner was serving a term of supervised release following his 2002 conviction in the Superior Court of the District of Columbia for armed robbery and assault with intent to commit robbery. See Resp't Opp'n, Ex. A (Judgment and Commitment Order, Crim. No. F-2833-02) & Ex. B (Certificate of Supervised Release).

assault on Annie Brown on October 9, 2006; and (3) violation of a civil protection order. *Id.*, Ex. G at 1-2. Although the United States Marshals Service executed the warrant on March 21, 2007, it did not notify the USPC until May 17, 2007. *Id.*, Ex. G (Warrant) & Ex. J (SRAA Local Revocation Prehearing Assessment) at 2. At the request of petitioner's counsel, the USPC postponed the probable cause hearing from May 18 to May 22, 2007. *Id.*, Ex. J at 2. The hearing examiner found probable cause as to the two assault charges. *Id.*, Ex. I at 3.

Another USPC hearing examiner conducted petitioner's revocation hearing on June 6, 2007. Resp't Opp'n, Ex. K (Hearing Summary) at 1 (page numbers designated in the Hearing Summary). Ms. Annie Brown, the victim of both assaults and the mother of two children with petitioner, testified at the hearing. *See id.* at 2-5. Ms. Brown described an incident on August 27, 2006 during which petitioner tossed a bag of clothing at her and "pushed her from behind, causing her to fall on her stomach." *Id.* at 2. Ms. Brown made a statement to a Metropolitan Police Department officer and on the following day she obtained a civil protection order.[3] *Id.* The hearing examiner summarized a "very detailed cross-examination" by petitioner's counsel as follows:

> She asked the witness about her mental health status. Ms. Brown stated she suffers from depression and cancer. [Counsel] questioned the witness about a [civil protection order] that had been filed AGAINST Ms. Brown as a result of her assaulting [petitioner] and a female friend, Ms. Dupree, and charged of Destruction of Property. As a part of a plea agreement, Ms. Brown was ordered to stay away from the 400 block of Missouri Avenue, N.W. (the home of Ms. Dupree). Upon incessant questioning by the attorney, Ms. Brown acknowledged she violated her own stay away order. She noted that

---

[3] Petitioner provides a copy of two of three pages of a Petition and Affidavit for Civil Protection Order which describes incidents occurring on August 27 and October 9, 2006. *See* Pet., Attach. (CPO No. 06CP03139).

> she and [petitioner] had continued their intimate relationship in spite of the stay away order. Ms. Brown reiterated the details of the assault. [Counsel] questioned the witness as to whether she informed the police of the stay away order that had been imposed against her. Ms. Brown responded in the affirmative as well as noted that she had no known injuries or discoloration as a result of the assault.

*Id.* During a recess, Ms. Brown stated that she "was frightened of being in the same room as [petitioner]" and explained her belief that petitioner would not be present while she testified. *Id.* Over the objection of petitioner's counsel, the hearing examiner resumed the proceedings after petitioner was removed from the room. *Id.* at 3. Further cross-examination of Ms. Brown explored her 2004 arrest and whether Ms. Brown "had ever[] falsely accused [petitioner]" or had testified falsely at a prior revocation hearing. *Id.* Ms. Brown "acknowledged that she did lie" at a 2005 revocation hearing, recanting the charges at her son's request so that "his father could get out of prison." *Id.* In addition, she admitted that she "cancelled the stay away order so that her children could have access to their father." *Id.* Notwithstanding the testimony elicited on cross-examination, the hearing examiner "found Ms. Brown's testimony credible." In the examiner's words, she "has steadfastly provided an accounting of the events resulting in her being assaulted by [petitioner]." *Id.* He described Ms. Brown's account of her relationship with petitioner as "chaotic," and found that years-long involvement was "filled with arguments and physical confrontations." *Id.* Based on the "credible testimony of Ms. Brown," the hearing examiner found that petitioner violated the conditions of his release by assaulting Ms. Brown on August 26, 2006. *Id.*

Ms. Brown also testified regarding the alleged assault on October 9, 2006. Resp't Opp'n, Ex. K at 3-5. After petitioner's counsel in the hearing examiner's words "continued to badger the witness" on cross-examination, Ms. Brown "stated that she was no longer going to answer any

further questions." *Id.* at 4. The hearing examiner called a recess and allowed Ms. Brown to leave. *Id.* Although he found that Ms. Brown's testimony about the assault "seemed credible, there were instances that this Examiner felt needed to be further explored." *Id.* In addition, Ms. Brown's premature departure prevented completion of counsel's cross-examination. *Id.* The hearing examiner made no finding on this charge due to the premature termination of cross-examination upon Ms. Brown's departure. *Id.* at 5.

The hearing examiner recommended revocation of petitioner's supervised release, a prison term of 16 months from the date of the warrant's execution, and a new 42-month term of supervised release. Resp't Opp'n, Ex. L at 5. The USPC departed from this recommendation in part, and instead imposed a 22-month term of imprisonment followed by a 36-month term of supervised release. *Id.*, Ex. M (July 24, 2007 Notice of Action).

## II.   DISCUSSION

Petitioner was incarcerated at the District of Columbia's Correctional Treatment Facility at the time he filed the petition. According to the Federal Bureau of Prisons' Inmate Locator (http://bop.gov/iloc2/LocateInmate.jsp) petitioner has been transferred to the Hazelton United States Penitentiary in Bruceton Mills, West Virginia. Notwithstanding the transfer, this Court retains jurisdiction. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); *Chatman-Bey v. Thornburgh*, 864 F.2d 804. 806 n.1 (D.C. Cir. 1988) ("habeas jurisdiction . . . continues to be in the district where the petitioner was incarcerated at the time the habeas petition was filed").

Petitioner raises three challenges to the USPC's decision. Each is addressed below.

### A.   Probable Cause and Revocation Hearings

Petitioner asserts that the USPC failed to conduct timely probable cause and revocation

hearings. Pet. at 3 (page numbers designated by the Court). According to the applicable regulations, "[a] supervised releasee who is retaken and held in custody in the District of Columbia on a warrant issued by the [USPC], and who has not been convicted of a new crime, shall be given a probable cause hearing by an examiner of the [USPC] no later than five days from the date of such retaking." 28 C.F.R. § 2.214(a). "If the examiner finds probable cause, the examiner shall schedule a final revocation hearing to be held within 65 days of the releasee's arrest." *Id.* The USPC "acknowledges that, due to an administrative error, the petitioner did not receive his hearing within the time frame contemplated by the [USPC's] regulations." Resp't Opp'n at 5 n.3.

The available remedy to a petitioner whose revocation hearing is untimely is a writ of mandamus directing the USPC to conduct a hearing. *See Sutherland v. McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983); *Crum v. United States Parole Comm'n*, 814 F. Supp. 1, 3 (D.D.C. 1993). However, because the USPC already has conducted both hearings, petitioner is not entitled to mandamus relief. Habeas relief "is only available where a petitioner establishes that the [USPC's] delay in holding a revocation hearing was both unreasonable and prejudicial." *Sutherland*, 709 F.2d at 732. Petitioner presents no argument, compelling or otherwise, establishing that the delay in this case either was unreasonable or has prejudiced him in any way. Thus, petitioner's timeliness challenge is without merit. *See, e.g., Crum*, 814 F. Supp. at 3 (denying habeas relief for parole violator absent showing of prejudice by delay of more than 90 days).

### B. "No Papered" Criminal Charge

According to the USPC, petitioner was arrested on October 12, 2006 and charged with both the August 27 and October 9, 2006 assaults. *See* Resp't Opp'n, Ex. G (Warrant Application)

at 1-2.  It based its charges of assault on a November 6, 2006 violation report prepared by supervision officer Tiffany Wright and a police report dated October 12, 2006.  *Id.*  Neither of these documents is included in this record.  Petitioner alleges that, although he was arrested and charged with simple assault, he appeared for arraignment in the Superior Court only to find that the case was "no papered."  Pet. at 1.  Absent criminal charges, petitioner argues that the USPC had no basis for revoking his supervised release.  *See id*. at 2.  His argument is without merit.

"New criminal conduct may be determined either by a new federal, state, or local conviction or by an independent finding by the [USPC] at [a] revocation hearing."  28 C.F.R. § 2.21(a)(2).  The USPC, then, is not bound by the initiation or outcome of a criminal case.  *See, e.g., Maddox v. Elzie*, 238 F.3d 437, 447 (D.C. Cir.) (upholding Parole Board's decision to revoke parole after acquittal where it made revocation decision independently based on *ex parte* communication with prosecutor), *cert. denied*, 534 U.S. 836 (2001); *Crawford v. Barry*, No. 95-7073, 1996 WL 734096, at *1 (D.C. Cir. Nov. 8, 1996) (per curiam) (Parole Board properly relied on criminal charge of which appellant had been acquitted); *Arias v. United States Parole Comm'n*, 648 F.2d 196, 200 (3d Cir. 1981) (USPC "acted neither improperly nor unconstitutionally when it examined appellant's presentence report which included information relating to a separate, dismissed indictment"); *Alston v. Gaines*, 158 F. Supp. 2d 76, 78-80 (D.D.C. 2001) (upholding revocation of parole based on domestic assault charge even though victim retracted her original complaint); *Barnes v. D.C. Board of Parole*, 759 A.2d 1073, 1075 (D.C. 2000) ("Even though the murder charge against Barnes was dropped, it was permissible for the Board [of Parole] to consider, as it did, the facts underlying that charge.").  The USPC therefore did not err in basing its revocation decision on conduct for which petitioner was not prosecuted.

*C. Sufficiency of the Evidence*

Lastly, petitioner argues that Ms. Brown is not a credible or reliable witness because "she have [sic] a problem with telling the truth." Pet. at 2. In his view, Ms. Brown offered false testimony in retaliation for a criminal charge she faced following an incident on May 9, 2006 involving petitioner and his girlfriend, Ms. Linda Dupree, at Ms. Dupree's residence. *See* Pet., Attach. (Affidavit in Support of Arrest Warrant and Release Order Addendum for Crim. Case No. 040602319).

The Court construes petitioner's assertion as an allegation that the USPC denied him due process. A decision to revoke supervision would violate a releasee's due process right if it "were either totally lacking in evidentiary support or were so irrational as to be fundamentally unfair." *Duckett v. Quick*, 282 F.3d 844, 847 (D.C. Cir.), *cert. denied*, 537 U.S. 863 (2002); *see Singletary v. Reilly*, 452 F.3d 868, 872 (D.C. Cir. 2006); *Crawford v. Jackson*, 323 F.3d 123, 129 (D.C. Cir.), *cert. denied*, 540 U.S. 856 (2003).[4] The USPC may revoke supervision if it "finds by a preponderance of the evidence that the releasee has violated one or more conditions of supervised release." 28 C.F.R. § 2.218(a); *see Alston v. Gaines*, 158 F. Supp. 2d at 80 ("The Parole Commission need only find a violation of parole conditions by a preponderance of evidence."). It is not the Court's place to review the USPC's exercise of discretion in revoking supervised

---

[4] "A supervised release revocation hearing is the functional equivalent of a probation or parole revocation hearing." *Jones v. United States*, 669 A.2d 724, 727 (D.C. 1995); *see United States v. Frazier*, 26 F.3d 110, 113-14 (11th Cir. 1994) (finding "no significant conceptual difference between the revocation of probation or parole and the revocation of supervised release"); *see also United States v. Paskow*, 11 F.3d 873, 881 (9th Cir. 1993) (finding that "[s]upervised release and parole are virtually identical systems" under which a defendant who "violates the terms of his release [] may be incarcerated once more under the terms of his original sentence"). Accordingly, the law pertaining to the revocation of parole is applicable to the revocation of supervised release.

release, or "to repass on the credibility of reports and information received by the [USPC] in making its determinations." *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 944 (2d Cir. 1979) (quoting *Brest v. Ciccone*, 371 F.2d 981, 982-83 (8th Cir. 1967)).

In this case, petitioner offers nothing more than speculation as to Ms. Brown's motivation for testifying as she did at his revocation hearing. Moreover, petitioner fails to show that the hearing examiner erred in finding her testimony credible with regard to the August 27, 2006 incident. "The evaluation of a witness's credibility is a complex process, reliant on demeanor, body language, consistency of testimony, ability to withstand cross examination, and other factors." *Ali v. United States Parole Comm'n*, No. 03-989 (RMC), 2007 WL 666516, at \*6 (D.D.C. Mar. 2, 2007) (finding no due process violation where record provided sufficient evidence of witness testimony and hearing examiner's reasons for crediting that testimony). Unlike the Court, the hearing examiner had the opportunity to hear Ms. Brown's testimony, note her tone of voice, observe her demeanor, and evaluate her responses to counsel's questions on cross-examination. Petitioner was represented at the revocation hearing by counsel who cross-examined Ms. Brown at length. On this record, then, the Court cannot conclude that the USPC erred.

## III. CONCLUSION

The Court concludes that there is evidence in the record to support not only the alleged violation of the conditions of petitioner's release but also the USPC's discretionary decision to revoke release. Accordingly, the Court will deny the petition and dismiss this action. An Order consistent with this Memorandum Opinion will be issued separately.

_____/s/_____
JOHN D. BATES
United States District Judge

Date: January 9, 2008